UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RICHARD THOMAS PIGFORD          CIVIL ACTION NO. 06-0535-P

versus          JUDGE HICKS

WARDEN, ET AL.          MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Richard Thomas Pigford ("Petitioner") of possession of marijuana with intent to distribute. The charge arose from a traffic stop in which about 52 pounds of marijuana were found in the cargo area of an 18-wheel truck that Petitioner was driving on I-20. Petitioner's fingerprints were not on the drugs, and the prosecution had to rely solely on circumstantial evidence to prove Petitioner's knowledge that the drugs were in the trailer. The jury found Petitioner guilty, and the court imposed an eight-year sentence.

Petitioner appealed and challenged the sufficiency of the evidence. A three-judge appellate panel unanimously found that the evidence was not sufficient, so it entered a judgment of acquittal. State v. Pigford, 892 So.2d 724 (La. App. 2d Cir. 2005). The prosecution sought review from the Supreme Court of Louisiana. That seven-member court, in a unanimous opinion, held that the evidence was sufficient and reinstated the conviction. Pigford, 922 So.2d 517 (La. 2006). Petitioner now seeks federal habeas relief on the sufficiency of the evidence issue. It is recommended, for the reasons that follow, that the petition be denied.

**The Evidence**

A computer weight monitoring system set up on Interstate 20 in Caddo Parish by state police registered an eastbound Volvo 18-wheeler 3,000 pounds over the state weight limit of 80,000 pounds. The vehicle, driven by Petitioner, was directed to pull over into the nearest weigh station where the truck was weighed on the stationary scales and again registered 3,000 pounds over the legal limit. Petitioner's wife accompanied him as a passenger in the truck.

Sergeant Brierre Thomas, with the Louisiana Department of Transportation, Weights and Standard Unit, and Deputy Danny Williams, a K-9 officer with the Caddo Parish Sheriff's Office, interviewed Petitioner. Petitioner told them that he was traveling to New York; however, the bill of lading showed that he was hauling a load of grapes from Reedley, California to Pittsburgh, Pennsylvania.

Sergeant Thomas and Deputy Williams were concerned about the discrepancy in the destination for the load of grapes and about Petitioner's seemingly wayward route from California to either New York or Pennsylvania, so they asked Petitioner to open the back of the trailer so they could see what he had as cargo. Petitioner refused to open the trailer, telling the officers he was a member of the NAACP, and that he knew he had a right to refuse to allow the search.

Immediately after Petitioner refused to open the trailer, Sergeant Thomas called Peggy Adley, an agent with the Public Service Commission. Sergeant Thomas testified that he

called Adley because she would need to know what was in the trailer, that she would need to check Petitioner's "single state registration" and insurance, and that she would have authority to inspect his load to see if it matched the bill of lading. Officer Adley arrived and told Petitioner that she had the right to inspect the trailer without his consent. Petitioner produced a key, unlocked the padlock, and opened the trailer's doors.

At the request of Officer Adley, Officer Thomas climbed up onto the back of the trailer to inspect the load. The officer testified that as he stood up at the back of the trailer he saw in "plain view" the end of a large package sitting on top of the boxes of grapes, less than an arm's length from the back end of the load. Officer Thomas turned his head and asked Petitioner what the object was, and Petitioner indicated that he knew nothing about it. The officer then reached over the stacked boxes of grapes and pulled the package towards him. The package was wrapped in clear plastic wrap and duct tape; it measured approximately a foot wide and six-and-a-half to seven feet long. According to Adley, who stood outside at the rear of the truck, the large package was not visible from her vantage point when she looked through the opened doors of the trailer.

After Thomas removed the package, Deputy Williams cut a slit in the side and determined that the bundle contained marijuana. The package contained approximately 52 pounds of marijuana possessing a street value of $52,000. Both officers testified at trial that the amount of marijuana, its value, and the manner of its packaging, were consistent with an

intent to distribute. No fingerprints were found on the package, and the officers determined that Petitioner's bill of lading for his cargo was otherwise in good order.

Petitioner represented himself at trial after terminating a succession of attorneys. His defense emerged in his opening remarks to jurors and in cross-examination of the state's witnesses. Petitioner urged jurors to consider that he was not off route because Interstate 20 runs to California, and he promised to produce a map to prove the point. Petitioner also urged jurors to consider that no evidence would establish that he had witnessed the loading of the trailer in California. Petitioner prompted Deputy Williams to admit that it was possible that someone loading the grapes could have placed the marijuana in the trailer while Petitioner was sorting out his paperwork, and that someone else could have taken the marijuana off at the other end, all without the driver ever knowing the drugs were in the trailer. Petitioner also got Williams to admit that Williams did not remember if he ever asked Petitioner if he watched the truck as it was loaded. It was therefore entirely possible, Petitioner suggested, that persons unknown to him had concealed the marijuana in the trailer without his knowledge and far enough back from the trailer door that it was not visible to anyone standing outside, and then alerted other conspirators in New York waiting to off-load the contraband that the shipment was on its way. As for the discrepancy in the load's ultimate destination, Petitioner suggested that he had been transporting a "blind shipment," which Petitioner said was a shipment intended by the broker for a destination other than the one listed on the bill of lading.

Petitioner did not, however, offer the promised map or any other evidence at trial. Instead, he fled during a lunch break that came just after the state announced that it rested its case. Petitioner was convicted in his absence, and he is now serving his sentence.

**The Jackson Standard**

In evaluating the sufficiency of evidence to support a conviction "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 99 S.Ct. 2781, 2789 (1979). The trier of fact has broad discretion to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

A Louisiana statute sets forth a standard for the consideration of circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La.R.S. 15:438. To the extent this statute might impose a more onerous standard of review when a jury's verdict is reviewed, a federal habeas court does not apply that standard. Only Jackson need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n. 9 (5th Cir. 1992).

**The State Appellate Court**

The state appellate court set forth the facts established by the evidence and reviewed the Jackson standard of review. The court also made note of the circumstantial evidence rule

found in La.R.S. 15:438. The court then reviewed the elements of the offense, which include possession, either actual or constructive, of the controlled substance.

The appellate court distinguished cases in which drivers were convicted based on the discovery of contraband in the cab of the truck rather than the trailer or cargo area. The court noted that the cargo area of a truck might be accessed by numerous other people involved in the loading or unloading of the cargo, so the mere fact a driver has access to the cargo area was deemed insufficient proof of constructive possession of contraband found in the cargo. The court insisted on some other evidence to preclude the possibility that the contraband was put there by third persons or evidence that would prove that the driver had knowledge of the contraband. The court discussed the evidence and found it insufficient because it did not preclude the possibility that Petitioner hitched the already-loaded trailer to his truck and drove away with no knowledge of the drugs inside.

**Supreme Court of Louisiana**

The Supreme Court of Louisiana also carefully reviewed the evidence and discussed the Jackson standard. It faulted the appellate court's view of the Jackson standard as requiring the state's case to preclude the possibility that Petitioner hitched his truck to the loaded trailer with no knowledge of the drugs. The pertinent question on appellate review, said the higher court, was not whether the appellate court found that Petitioner's hypothesis of innocence offered a reasonable explanation for the evidence, but whether jurors acted reasonably in rejecting that hypothesis as a basis for acquittal.

The Court reasoned that Petitioner's alternative hypothesis of innocence may have been possible, "but it clearly was not so probable that reasonable jurors would necessarily have to entertain a reasonable doubt of defendant's guilt." Pigford, 922 So.2d at 521. The Court conceded that Petitioner's dominion and control over the trailer and access to its contents did not alone establish his guilty knowledge of the marijuana on top of the pallets, but it found that there was other evidence to provide jurors with evidence from which a rational trier of fact could infer guilty knowledge. It noted Sgt. Thomas' testimony that Petitioner appeared unusually nervous although he was stopped for only a routine weight violation. Tr. 309. Deputy Williams, who actually removed the package from the truck, testified that when he pulled the package out he turned and asked Petitioner again if he had any illegal narcotics. Williams said that Petitioner "just kind of ducked his head and said no. That's all he would say." Petitioner was rather calm and not excited. Tr. 335.[1] Ms. Pigford was in the cab of the truck during the search. Deputy Williams approached her after Petitioner was placed under arrest, and Ms. Pigford denied knowing anything was in the back of the truck. She did not appear to be excited by the events. Tr. 338-39.

The Court also noted that Petitioner never produced his promised map to explain his unusual route. Petitioner told the officers that the trailer had been loaded in California for delivery to New York. (The bill of lading listed a destination of 2031 Penn Avenue, Suite 203 in Pittsburgh, PA, but Petitioner says that was a mere business address and that the

---

[1] Deputy Williams was, after the arrest of Petitioner, himself arrested on unrelated drug charges and was serving a federal prison sentence at the time of his testimony.

produce was bound for a New York farmer's market.) The Supreme Court noted that I-20 does not, as represented by Petitioner in his opening statement, run all the way from Louisiana to California. Rather, it reaches only into west Texas, where one must connect to I-10 to travel to southern California. Deputy Williams had testified that it seemed to him a long way around from California to New York "coming down this far instead of going across the mid-section." Tr. 333. Petitioner cross-examined Deputy Williams about the issue and again suggested that I-20 traveled from Shreveport "straight into California." Deputy Williams admitted that he had never driven I-20 to California so was not sure of its route. Petitioner asked what route Williams thought the driver should have taken. Williams testified: "In my estimation from California going to New York if you go right through the middle of the country instead of coming down south and then going up it would be shorter." Tr. 352. There was also some suggestion that Petitioner had lied about his destination. Petitioner suggested that the discrepancy between his stated destination and that written on his bill of lading was attributable to something called a "blind shipment." None of the state's witnesses had heard of a blind shipment, and Ms. Adley testified, "Your bills have to match." Tr. 369. The Supreme Court noted that blind shipments do exist in trucking, but the bill of lading introduced at trial was not such an item. 922 So.2d at 522, n. 2.

The Supreme Court next observed that if persons who loaded the trailer had attempted to conceal the 6 to 7 foot long package, they chose a least likely spot to keep it concealed from the driver who had a key to the lock on the trailer. Furthermore, the location of the marijuana at the rear of the trailer suggested that it had been placed inside after the trailer

was fully loaded and not during the loading process (when a much more secure hiding spot could have been employed). Finally, the Court stated that rational jurors could consider the likelihood that a person would place over $50,000 worth of marijuana in a driver's trailer when the trailer is merely padlocked, the driver has a key to the lock, and the package can be easily found on top of the legal load. Under those circumstances, the Supreme Court of Louisiana concluded that jurors could reasonably reject the hypothesis of innocence advanced by Petitioner and find him guilty beyond a reasonable doubt.

**AEDPA Standard of Review**

This court's role is not to apply Jackson and make its own decision of whether the verdict was supported by sufficient evidence. This court must review the adjudication of the case by the Supreme Court of Louisiana and assess whether it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

The state court invoked, recited and applied the Jackson standard, so its decision was not "contrary to clearly established Federal law." Thus, Petitioner can obtain habeas relief only if the state court's decision was an "unreasonable application" thereof. Williams v. Taylor, 120 S.Ct. 1495, 1523 (2000).

Under the unreasonable application clause, a federal court is permitted to grant the writ if the state court has identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the prisoner's case. Williams, 120 S.Ct. at 1523. Even if the federal court, in its independent judgment, has a firm

conviction that the state court was incorrect in its application of a federal constitutional principle, that alone does not permit the federal court to grant habeas relief. Relief is not permitted unless the state court decision was not only incorrect or erroneous but objectively unreasonable. Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005); Lockyer v. Andrade, 123 S.Ct. 1166, 1175 (2003). And it is only the state court's ultimate decision, not the quality of its analysis or opinion, that is at issue. Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002)(en banc).

**Analysis**

Petitioner attacks the state court's analysis and attempts to explain or belatedly add to the trial evidence. For example, with respect to the destination of the load, Petitioner says that the 40,000 pounds of grapes were being shipped to a farmers market in the Bronx, New York, and not the Philadelphia business office (Suite 201) listed on the paperwork. He suggests that the state could have obtained a copy of the signed bill of lading after the load was delivered and confirmed this fact, but the state did not produce such evidence.

Petitioner also argues that no experienced truck driver would attempt to travel from California to New York on I-40 (which traverses the mid-section of the country) because, though the distance is shorter, the route is not faster. The I-40 route, Petitioner writes in his memorandum, forces the driver to face several mountain ranges that are avoided by traveling the relatively flat I-10 and I-20 before turning northward on I-95. Petitioner says his route saves fuel and time, is less harsh on the truck's engine, and avoids safety risks that are

inherent in driving a truck in the mountains. The problem with this explanation is that there was no such evidence before the state court; it comes only in Petitioner's habeas application.

The Supreme Court "has made clear that whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." Holland v. Jackson, 124 S.Ct. 2736, 2737-38 (2004). Petitioner could have attempted to present such evidence at trial, but he fled and abandoned that opportunity. He must now accept the record as it is. The court may not find the evidence sufficient based on the lack of defense evidence, but the defense may not belatedly attempt to present evidence in an effort to undermine the state's trial evidence and render it insufficient.

Petitioner also points to U.S. v. Ortega Reyna, 148 F.3d 540 (5th Cir. 1998) in which the court reversed a conviction of a Mexican citizen who was driving a truck that was found to have drugs hidden inside a tire. The court reviewed the types of behavior that have been recognized as circumstantial evidence of guilty knowledge, compared them to the facts and concluded that the evidence was not sufficient. Ortega Reyna was decided on facts perhaps similar but by no means identical to those presented in this case. Moreover, the federal appellate decision applied Jackson *de novo* on direct appeal from a federal conviction. This case is quite different. It requires the federal court to assess a state court conviction through the extraordinarily deferential standard of Section 2254(d).

Reasonable minds could certainly differ as to whether the evidence is sufficient under Jackson to permit a guilty verdict in this case. Three reasonable and experienced state court judges on the appellate court found that it was not, but all seven members of the Supreme

Court of Louisiana agreed that it was. Petitioner has pointed out what he believes are weaknesses in the evidence, but the Supreme court of Louisiana noted a number of factors that a reasonable juror could consider as evidence of Petitioner's guilty knowledge. The state court's application of Jackson to the facts was perhaps debatable among reasonable jurists, but it was not so wrong as to be an objectively unreasonable application of the Jackson principles. Habeas relief is, therefore, not permitted on the single issue presented in the petition.

Accordingly;

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**, and that Petitioner's complaint be **dismissed with prejudice.**

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this the 12th day of December, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE